UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEVIN TROY BOND,

                        Plaintiff,                                    Case No. 1:22-cv-660

v.                                                                          Honorable Jane M. Beckering

UNKNOWN BURGESS et al.,

                        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the

Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is

required to dismiss any prisoner action brought under federal law if the complaint is frivolous,

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a

defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The

Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520

(1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly

incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will

dismiss Plaintiff's complaint for failure to state a claim.

## **Discussion**

### I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)

at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events

about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee,

Manistee County, Michigan. Plaintiff sues Warden Unknown Burgess, Administrative Assistant Unknown O'Brien, Sergeants Unknown Stone and Unknown Johnson, OPT Chief Unknown Majerczyk, and Assistant Deputy Warden / Resident Unit Manager Unknown Erway. Plaintiff states that he is suing Defendants in their individual capacities.

On November 21, 2020, Plaintiff kited Defendant Burgess to address issues regarding Plaintiff's cell not being regularly opened for meals, yard and activities, unlike inmates housed in general population. (Compl., ECF No. 1, PageID.6.) Plaintiff was instead required to push the emergency call light to be let out; but even that was ignored by staff for two to three minutes on occasion. Plaintiff also complained that staff were discussing the contents of his personal conversations with family with other prisoners. Plaintiff alleges that, on March 8, 2021, he was moved from housing Unit #6 to Unit #7 in retaliation for making these complaints.

On March 9, 2021, Plaintiff kited Defendants Burgess and Majerczyk, as well as Resident Unit Manager Haske (not a party), to discuss the discriminatory harassment by staff in not opening Plaintiff's cell door. On March 10, 2021, Plaintiff spoke directly with Defendant Erway in the housing unit laundry room and complained that unit staff would not open Plaintiff's cell door for yard and chow on a regular basis. Plaintiff again stated that this forced him to push the call light to get his cell open and that it would take two to three minutes before staff would comply, all the while arguing with Plaintiff. Defendant Erway told Plaintiff that he would get to the bottom of it and see that Plaintiff was treated the same as other inmates. Plaintiff spoke with the Ombudsman Representative on March 11, 2021.

On June 6, 2021, and June 9, 2021, Plaintiff kited Defendant O'Brien. He then spoke with Defendant O'Brien on June 11, 2021, after being temporarily placed in segregation. One of the many issues that Plaintiff raised was that Officer Kophfman (not a party) discriminated against

Plaintiff by refusing to open Plaintiff's door for breakfast or lunch. When Plaintiff attempted to speak with Kophfman regarding the matter, Kophfman refused to respond. Plaintiff states that his placement in temporary segregation occurred at 11:25 a.m., after he asked to speak with the Shift Commander. Plaintiff was released from segregation at 12:42 p.m. and spoke with Defendant O'Brien at 1:25 p.m.

On November 15 or 16 of 2021, Plaintiff attempted to speak with Defendant Stone, but Defendant Johnson interrupted and said that they would resolve Plaintiff's issues with his cell door not being opened. However, on November 20, 2021, all doors were opened for chow except for Plaintiff's. When Plaintiff approached staff to complain, Plaintiff received a misconduct for threatening behavior and was placed in segregation. Plaintiff pleaded guilty and received 10 days' loss of privileges.

Following Plaintiff's time in detention, Plaintiff was found to be unmanageable and was placed in a START program. Plaintiff asserts that this was retaliatory because he did not have a history of mental illness or other issues which would serve as a reason for such programming. Defendant Stone told Plaintiff that he was being placed in Unit 4 pending his transfer to another alternative unit on Level #2; however, none of the staff or psychiatrists on Unit 4 knew why Plaintiff had been placed there. After two and a half to three months, Plaintiff asked to speak with Defendant Stone and was told that he no longer worked at ECF, which was untrue. Plaintiff was finally released to Level #2, where he experienced the same issues and continued asking Defendants Stone and Johnson if he could be transferred. In addition, Plaintiff's family repeatedly contacted administration regarding his treatment by staff, only to be insulted and to have the phone hung up on them.

Plaintiff claims that he has continued to be harassed and to receive retaliatory misconduct tickets, which resulted in his placement in segregation. Most recently, Plaintiff received a threatening behavior ticket on June 15, 2022, and was placed in segregation. Plaintiff pleaded guilty to the misconduct and received 10 days on toplock and 10 days' loss of privileges. Plaintiff was told that he was being transferred to another Level #2, but that has not happened. Instead, Plaintiff was housed in segregation for over 30 days, which Plaintiff claims is another form of retaliation. Plaintiff asserts that the conduct of staff has resulted in psychological distress and that he has also lost personal property and store merchandise.

Plaintiff claims that Defendants violated his rights under First and Fourteenth Amendments, as well as under state law. Plaintiff seeks damages and to be transferred to a different prison.

## II.     Request to be Transferred to Another Prison

Initially, the Court notes that Plaintiff's request to be transferred to a different prison is moot. As noted above, the events about which Plaintiff complains occurred at ECF, which is where Plaintiff was incarcerated at the time he signed his complaint. However, Plaintiff has since been transferred to IBC. Therefore, because Plaintiff has already received the exact relief being sought, the Court will dismiss the request for injunctive relief as moot.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

4

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to allege that any Defendant took any action against him, other than to suggest that Defendants failed to adequately supervise their subordinates or respond to Plaintiff's grievances, kites, or oral complaints. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658,

691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation

must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76

(6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's

subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.

*Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888

(6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied

an administrative grievance or failed to act based upon information contained in a grievance. *See*

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Iqbal*, 556 U.S. at 676.

 The Sixth Circuit repeatedly has summarized the minimum required to constitute active

conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending
> individual is not actionable *unless* the supervisor either encouraged the specific
> incident of misconduct or in some other way directly participated in it." *Shehee,*
> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have
> interpreted this standard to mean that "at a minimum," the plaintiff must show that
> the defendant "at least implicitly authorized, approved, or knowingly acquiesced in
> the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300,

and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v.*

*Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976),

and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d

1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

 Plaintiff fails to allege any facts showing that any of the named Defendants encouraged or

condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in

the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory

allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 action is premised on nothing more than respondeat superior liability, his action fails to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:    October 26, 2022                              /s/ Jane M. Beckering
                                                        Jane M. Beckering
                                                        United States District Judge

7